I am authorized to state that Justice Workman joins in this dissent.

737 S.E.2d 61

**STATE of West Virginia ex rel. MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, Petitioner**

**v.**

**The Honorable David H. SANDERS, Judge of the Circuit Court of Jefferson County; Howard G. Demory; Charlotte Demory; 3rd Time Trucking, LLC; and Eric W. Custer, Respondents.**

No. 12–0699.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 25, 2012.

Decided Nov. 9, 2012.

166

Ancil G. Ramey, Esq., William E. Galeota, Esq., Lucien G. Lewin, Esq., Steptoe & Johnson PLLC, Huntington, WV, for the Petitioner.

Robert J. Schiavoni, Esq., David M. Hammer, Esq., Hammer, Ferretti & Schiavoni, Martinsburg, WV, F. Samuel Byrer, Esq., Peter A. Pentony, Esq., Law Office of F. Samuel, Byrer, PLLC, Charles Town, WV, Brad D. Weiss, Esq., Charapp & Weiss, LLP, McLean, VA, for Respondents.

PER CURIAM:

This case is before the Court on a petition for writ of prohibition brought by Massachu-setts Mutual Life Insurance Company ("MassMutual") seeking to prohibit the Circuit Court of Jefferson County, West Virginia, from enforcing its Order entered on May 24, 2012, requiring Roger Crandall, President, Chief Executive Officer ("CEO"), and Chairman of MassMutual, to submit to deposition. MassMutual argues that the circuit court failed to comply with this Court's decision in *State ex rel. Massachusetts Mutual Life Ins. Co. v. Sanders*, 228 W.Va. 749, 724 S.E.2d 353 (2012) (*"MassMutual I"*), in ordering its president to submit to deposition. MassMutual contends 1) that the Respondents' arguments below in trying to defeat the motion for protective order were already rejected by this Court in *MassMutual I*; 2) that Mr. Crandall's alleged second-hand information that he received in the ordinary scope of corporate responsibilities was insufficient to satisfy the personal knowledge requirement of the apex deposition rule; and 3) that inconvenience to a party is an insufficient reason to alleviate the party's responsibility to exhaust less intrusive discovery alternatives to the deposition of a high-ranking corporate official. This Court issued a Rule to Show Cause. Based upon a review of the record, the parties' briefs and arguments, and all other matters before the Court, the Court grants the requested writ.

I. Facts and Procedural Background

This is the second time this case has been before the Court within the past year on the same issue. Originally the Petitioner sought a writ of prohibition seeking to stop the deposition permitted by the circuit court of Roger Crandall, President, Chief Executive Officer ("CEO"), and Chairman of MassMutual just two months after the filing of the Respondents' lawsuits. The Respondents are the Plaintiffs below in the civil actions styled *Howard G. Demory, et al. v. Massachusetts Mutual Life Insurance Company*, Case No. 11–C–131, and the related case of *3rd Time Trucking, LLC, et al. v. Massachusetts Mutual Life Insurance Company*, Case No. 11–C–68.[1] The lawsuits are part of a series of 412i retirement plan cases[2] filed in

---

1. The Honorable David H. Sanders, Judge of the Circuit Court of Jefferson County is also named as a Respondent for purposes of the writ.

2. A 412i plan refers to provisions in the federal tax code. *See* 26 U.S.C.A. § 412(i). The current version of the tax code is found in 26 United States Code Annotated § 412(e)(3) (2006).

Jefferson County, West Virginia, against multiple defendants including MassMutual.[3] The Respondents allege fraud and tax fraud in their Complaints regarding annuities and pension plans that have allegedly subjected the Respondents to tax and compliance penalties, as well as other collateral liabilities.

The only issue before the Court in *Mass-Mutual I* was whether "a high-ranking corporate official who is without any personal or unique knowledge of the facts and circumstances of a case can be compelled to be deposed, despite the availability of other corporate witnesses and other means of discovery." 228 W.Va. at 754, 724 S.E.2d at 358. On February 24, 2012, this Court issued its opinion in *MassMutual I* in which the apex deposition rule was adopted. *Id.* at 751, 724 S.E.2d at 355, Syl. Pt. 3. Under the Court's holding, a party seeking to depose a high-ranking corporate official must demonstrate that the official has unique or personal knowledge of discoverable information. *Id.* If the party cannot establish that the official has unique or personal knowledge, the circuit court was to issue a protective order and first require the party seeking the deposition to attempt to obtain the discovery sought through less intrusive methods. *Id.* In *MassMutual I*, the Court issued the writ of prohibition and prohibited the circuit court from enforcing its orders that directed Mr. Crandall submit to deposition. *Id.* at 761, 724 S.E.2d at 365.

Despite the presence of some discovery information that was before the circuit court in *MassMutual I*, "because the circuit court ... did not make findings of fact nor conclusions of law," we determined that there was an "insufficient basis to sustain the circuit court's denial of the protective order...." *Id.* at 760–61, 724 S.E.2d at 364–65. Thus, we expressly rejected the circuit court's finding that "Mr. Crandall was a 'fact' witness[,]" due to the finding being "conclusory in nature and unsupported by the record." *Id.* at 754, 724 S.E.2d at 358.

On March 22, 2012, the Court issued its mandate in *MassMutual I* and jurisdiction

was returned to the circuit court. *See* W. Va. Rev. R. of App. P. 26. On April 5, 2012, just fourteen days after the mandate was issued, the Respondents served amended notices of deposition on the Petitioner setting April 30, 2012, as the date Mr. Crandall was to be deposed. Prior to serving the new deposition notices, the Respondents did not take any additional depositions, serve any new requests for documents, interrogatories, or requests for admission, or notice depositions for any other witnesses, including any lower level MassMutual employees that had been previously noticed for deposition before the rule to show cause issued in *MassMutual I*.

Counsel for the Petitioner attempted to resolve the matter informally as demonstrated by a letter to the Respondents' counsel dated April 11, 2012. The parties, however, were unable to resolve the discovery dispute as reflected in a response letter from the Respondents' counsel to the Petitioner's counsel dated April 12, 2012.

Thereafter, the Petitioner filed a motion for protective order requesting the circuit court to prohibit the deposition of Mr. Crandall because he lacked unique or personal knowledge of discoverable information in the case. Attached to the Petitioner's motion was Mr. Crandall's affidavit in which he stated that he had no personal or unique knowledge about the Plaintiffs, their respective purchases of MassMutual products, or their disputes with or lawsuits filed against Mass-Mutual.

On May 14, 2012, the circuit court held a hearing on MassMutual's motion for protective order. The Petitioner maintained that the Respondents failed to present any new evidence during the course of the hearing to defeat or challenge Mr. Crandall's statements in his affidavit indicating that he had no personal or unique knowledge regarding the Respondents' lawsuits. The Respondents, in an attempt to show that Mr. Crandall had personal or unique knowledge,

---

**3.** Basic facts regarding the underlying litigation are set out more fully in *MassMutual I. See* 228 W.Va. at 752–53, 724 S.E.2d at 356–57.

offered compliance reports[4] and the video deposition of Brad Lucido, the Chief Compliance Officer of MassMutual, all of which were part of the record before this Court in *MassMutual I*. Further, the Respondents referenced two different corporate representatives who were deposed pursuant to West Virginia Rule of Civil Procedure 30(b)(7).[5] Again, even the Respondents acknowledged before the circuit court that "[t]he Supreme Court was made aware of these depositions. We told them of the problems[,]" when *MassMutual I* was before the Court.

By Order entered May 24, 2012, the circuit court denied MassMutual's motion for protective order and directed that an "initial deposition" of Mr. Crandall occur within sixty days of the date of the Order. The circuit court concluded:

> Based on the above, *the Court* **HOLDS** *that although Plaintiffs have failed to prove Roger Crandall has unique or personal knowledge of the issue outlined above, Plaintiffs have in good faith sought less intrusive methods of discovery and proved it to be unsatisfactory, insufficient or inadequate.* Further, Plaintiffs proved that deposing Roger Crandall in the areas outlined above will lead them to relevant

and discoverable evidence. *Further, Plaintiffs are not required to wait until the Protective Order issued to prove they engaged in a good faith effort of less intrusive methods of discovery.* Holding otherwise would probably result in unreasonable waste of time and resources.

(Emphasis added). This ruling by the circuit court forms the basis for the present petition for writ of prohibition.

## II. Standard of Review

█ The focus of this case is the circuit court's application of the law enunciated by this Court in *MassMutual I*. This Court held in syllabus point four and five of *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W.Va. 802, 591 S.E.2d 728 (2003), that:

> 4. A circuit court's interpretation of a mandate of this Court and whether the circuit court complied with such mandate are questions of law that are reviewed *de novo*.

> 5. When a circuit court fails or refuses to obey or give effect to the mandate of this Court, misconstrues it, or acts beyond its province in carrying it out, the writ of prohibition[6] is an appropriate means of enforcing compliance with the mandate.

---

4. According to the Petitioner and the record, the compliance reports were prepared by Brad Lucido, MassMutual's Chief Compliance Officer, in February though June of 2011. The reports contain a line item referencing the formation of a team to identify "lessons learned" from the settlement of prior cases involving 412i retirement plans. The reports do not mention Mr. Custer, the Demorys or the lawsuits brought by the Respondents. Further, Mr. Lucido testified in his deposition that he had not met with Mr. Crandall specifically regarding 412i retirement plan matters. Mr. Lucido testified that he met every couple of months with Mr. Crandall "to generally discuss compliance matters within the company." Further, Mr. Lucido testified that he did send the February 2011 Compliance Program Report to Mr. Crandall, but he could not testify as to whether Mr. Crandall read the report.

5. The notices of these two corporate representatives included ninety-six different designated topics for the depositions. *See* W. Va. R. Civ. P. 30(b). Excerpts from these depositions are included in the record. These depositions were used by the Respondents as support for their argument that they were having a difficult time obtaining information from the corporate repre-

sentatives as counsel for the Respondents argued that "there were a lot of 'I don't knows.' "

6. *See* Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996) ("In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.").

*Id.* at 805, 591 S.E.2d at 731, Syl. Pts. 4 and 5 (footnote added).

### III.   Argument

The Petitioner argues that the circuit court's Order compelling the deposition of MassMutual's president, CEO, and chairman is contrary to this Court's decision in *Mass-Mutual I*. The Respondents, however, contend that Mr. Crandall's "pro forma" affidavit avoided the areas of inquiry that the Petitioner knew the Respondents wanted to pursue in deposition.[7]   Further, the Respondents maintain that they proved that they have attempted less intrusive methods of discovery, but that "these attempts were frustrated by unsatisfactory, insufficient and inadequate testimony from home office officials."   Finally, the Respondents offer that in *MassMutual I*, the Court stated that it was not pronouncing that a high-ranking corporate official's deposition could never be taken.

In *MassMutual I*, this Court undertook a complete and thorough examination of the apex deposition rule before adopting a version of the rule similar to that set forth by the Supreme Court of Texas in *Crown Central Petroleum Corp. v. Garcia*, 904 S.W.2d 125 (Tex.1995).   *MassMutual I*, 228 W.Va. at 760, 724 S.E.2d at 364.   In adopting the apex deposition rule for use in West Virginia, this Court acknowledged that the need for the rule stems from the recognition that " 'the highest positions within a juridical entity rarely have specialized and specific first-hand knowledge of matters at every level of the complex organization.' " *MassMutual I*, 228 W.Va. at 755, 724 S.E.2d at 359 (quoting *Alberto v. Toyota Motor Corp.*, 289 Mich. App. 328, 796 N.W.2d 490, 495 (2010)).   Additionally, we agreed that " '[i]n the case of an official at the head of corporate operations, ... expressions of ignorance of a specific case or claim are not implausible.' " 228 W.Va. at 757, 724 S.E.2d at 361 (quoting *Liberty Mut. Ins. Co. v. Superior Court*, 10

Cal.App.4th 1282, 13 Cal.Rptr.2d 363, 367–68 (1992)).   We also accepted that an apex deposition rule was necessary in the corporate context to " '(1) promote efficiency in the discovery process by requiring that before an apex officer is deposed it must be demonstrated that the officer has superior or unique personal knowledge of facts relevant to the litigation, and (2) prevent the use of depositions to annoy, harass, or unduly burden the parties.' " 228 W.Va. at 755, 724 S.E.2d at 359 (quoting *Alberto*, 796 N.W.2d at 495) (internal citations omitted).

The Court reiterated throughout *MassMutual I* the importance of evaluating whether the high-ranking corporate official has certain unique or personal knowledge and whether less intrusive methods of discovery were utilized to procure the information sought prior to attempting to obtain the deposition of a high-ranking corporate official. *See* 228 W.Va. at 755–60, 724 S.E.2d at 359–364.   These two concepts are the focus of the apex deposition rule set forth by the Court as follows:

> [w]hen a party seeks to depose a high-ranking corporate official and that official (or the corporation) files a motion for protective order to prohibit the deposition accompanied by the official's affidavit denying any knowledge of relevant facts, the circuit court should first determine whether the party seeking the deposition has demonstrated that the official has any unique or personal knowledge of discoverable information.   If the party seeking the deposition cannot show that the official has any unique or personal knowledge of discoverable information, the circuit court should grant the motion for protective order and first require the party seeking the deposition to attempt to obtain the discovery through less intrusive methods.   Depending upon the circumstances of the particular case, these methods could include the depositions of lower level corporate employees, as well as interrogatories and

---

7.   The Court summarily rejects the Respondents argument that Mr. Crandall's "pro forma" affidavit "avoided the areas of inquiry" that the Petitioner knew the Respondents wanted to pursue in deposition.   All that the Court required in *MassMutual I* is that the motion for protective order be accompanied by the "official's affidavit denying any knowledge of relevant facts."   228 W.Va. at 751, 724 S.E.2d at 355, Syl. Pt. 3, in part.   A review of Mr. Crandall's affidavit reveals that this requirement was met.

requests for production of documents directed to the corporation. After making a good faith effort to obtain the discovery through less intrusive methods, the party seeking the deposition may attempt to show (1) that there is a reasonable indication that the official's deposition is calculated to lead to the discovery of admissible evidence, and (2) that the less intrusive methods of discovery are unsatisfactory, insufficient or inadequate. If the party seeking the deposition makes this showing, the circuit court should modify or vacate the protective order as appropriate. As with any deponent, the circuit court retains discretion to restrict the duration, scope and location of the deposition. If the party seeking the deposition fails to make this showing, the trial court should leave the protective order in place.

*Id.* at 751, 724 S.E.2d at 355, Syl. Pt. 3.

Yet, the two significant focal points of the Court's holding in *MassMutual I*—unique or personal knowledge of the high-ranking corporate official and exhaustion of less intrusive methods of discovery—were lost in translation when the case was returned to the circuit court following that decision. Within two weeks of this Court issuing the mandate in *MassMutual I*, with no attempts at any less intrusive methods of discovery,[8] the Respondents once again noticed Mr. Crandall's deposition. The Petitioner, following the Court's directive in *MassMutual I*, filed "a motion for protective order to prohibit the deposition accompanied by the official's [Mr. Crandall's] affidavit denying any knowledge of relevant facts[.]" *Id.* at 751, 724 S.E.2d at 355, Syl. Pt. 3, in part. The Respondents filed a response in opposition to the Petitioner's motion.

The circuit court scheduled a hearing on the motion for protective order as contemplated in the holding of *MassMutual I* in order to "first determine whether the party seeking the deposition has demonstrated that the official has any unique or personal knowledge of discoverable information." *Id.* The Court further held that "[i]f the party seek-

ing the deposition cannot show that the official has any unique or personal knowledge of discoverable information, the circuit court should grant the motion for protective order and first require the party seeking the deposition to attempt to obtain the discovery to attempt to obtain the discovery through less intrusive means." *Id.*

■ As to this first critical phase of the apex deposition rule regarding the circuit court's determination of whether Mr. Crandall had "unique or personal knowledge of discoverable information," the Petitioner offered Mr. Crandall's affidavit supporting the motion for protective order, in which Mr. Crandall stated:

6. I have never met nor spoken with Eric Custer, Howard Demory or Charlotte Demory. I have no knowledge concerning 3rd Time Trucking, LLC ("3rd Time Trucking").

7. I have no knowledge concerning the purchase of MassMutual products by Mr. Custer, 3rd Time Trucking, Mr. Demory, or Mrs. Demory and I have no knowledge concerning any customer relationship between MassMutual and Mr. Custer, 3rd Time Trucking, Mr. Demory, or Mrs. Demory.

8. I do not personally sign or review any of the thousands of annuity contracts issued each year by MassMutual. I also do not sign or review any of the annuity contracts printed by MassMutual for customers at their request after the initial issuance. The cover page of fixed annuity contracts issued by MassMutual, or printed by MassMutual at a customer's request, contains the electronic signature of the President of MassMutual. I do not personally sign or review annuity contracts which contain my electronic signature.

9. I am not aware of, nor have I reviewed, any customer complaint or request for information from Mr. Custer, 3rd Time Trucking, Mr. Demory or Mrs. Demory.

10. I do not have any personal knowledge, including no unique or superior per-

---

**8.** The depositions of corporate officials taken pursuant to West Virginia Rule of Civil Proce-

dure 30(b) occurred in November of 2011.

sonal knowledge, concerning any facts relating to any dispute between either (i) Mr. Custer and 3rd Time Trucking and MassMutual, and/or (ii) Mr. and Mrs. Demory and MassMutual. Any second hand knowledge that I have is solely as a result of communications to me from counsel after my deposition was noticed in the above-captioned matters.

In opposition to the motion, the Respondents offered excerpts of depositions of other corporate officials, the compliance reports, and the testimony from Mr. Lucido, MassMutual's Chief Compliance Officer. After assessing all the evidence presented before it, the circuit court found that the "Plaintiffs have failed to prove Roger Crandall has unique or personal knowledge of the issue outlined above[.]"

Despite this express finding, the circuit court did not issue the protective order and did not require the Respondents to engage in discovery through less intrusive methods in direct contravention of this Court's holding in *MassMutual I. Id.* at 751, 724 S.E.2d at 355, Syl. Pt. 3. The Court is unpersuaded by the Respondents' argument that they have already tried less intrusive means of discovery as that claim is not supported by the record. The attempts at other discovery methods referred to by the Respondents are depositions of corporate officials that were taken prior to this Court's decision in *MassMutual I.* The Respondents contend these depositions provided unsatisfactory, insufficient and inadequate testimony from the corporate representatives. A review of the excerpts of testimony from these deponents, as well as the remainder of the record submitted in this case, however, reveals that there were no objections raised by the Respondents during the depositions, nor motions filed by the Respondents, which demonstrates that the Respondent sought to compel the discovery that the Respondents now claim was inadequate. The Respondents could have pursued a motion to compel against the Petitioner pursuant to West Virginia Rule of Civil Procedure 37 [9] based upon the Rule 30(b)(6) deponents' alleged failure to provide adequate or sufficient responses during the depositions; however, the Respondents have not availed themselves of the procedures set forth in the West Virginia Rules of Civil Procedure.

Again, the circuit court's finding that the Plaintiffs failed to prove Mr. Crandall has unique or personal knowledge of the issues in the instant matter required the circuit court to issue the protective order. The circuit court erred by not doing so. *See* 228 W.Va. at 751, 724 S.E.2d at 355, Syl. Pt. 3.

Because of the circuit court's finding that Mr. Crandall lacked unique or personal knowledge, if the Respondents still sought to depose him, they were required to demonstrate that they had attempted to obtain the discovery sought through less intrusive means first. *Id.* The circuit court, however, allowed the Respondents to depose Mr.

---

9. West Virginia Rule of Civil Procedure 37 outlines the procedure to be utilized to compel discovery. West Virginia Rule of Civil Procedure 37(a)(2) provides that:

If a deponent fails to answer a question propounded or submitted under Rule 30 or 31, or a corporation or other entity fails to make a designation under Rule 30(b)(7) or 31(a), or a party fails to answer an interrogatory submitted under Rule 33 ... the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request.

W. Va. R. Civ. P. 37(a)(2). Further, the language of the rule provides that "[f]or purposes of this subdivision, an evasive or incomplete answer or response is to be treated as a failure to answer or respond." W. Va. R. Civ. P. 37(a)(3).

Additionally, West Virginia Rule of Civil Procedure 30(d)(3) provides:

At any time during the taking of the deposition, on motion of a party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court in which the action is pending or the circuit court of the county where the deposition is being taken may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in Rule 26(c). If the order made terminates the examination, it shall be resumed thereafter only upon the order of the court in which the action is pending. Upon demand of the objecting party or deponent the taking of the deposition shall be suspended for the time necessary to make a motion for an order. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

W. Va. R. Civ. P. 30(d)(3).

Crandall without first pursing the discovery sought through less intrusive methods and without demonstrating that he had any unique or personal knowledge of the facts. *Id.* When the circuit court asked the Respondents' counsel during the hearing: "Have you ever specifically tailored questions that were to be specifically asked Mr. Crandall personally and directly?" The Respondents' counsel responded that "We have not proposed written interrogatories. We do not think that would be useful given the track record. . . ." Additionally, according to the Petitioner, the Respondents have not deposed the agent who actually recommended the 412i plan and who sold the annuity to the Demorys. Neither have the Respondents deposed two MassMutual employees, John Milbier and Barbara Carra, both of whom were identified as perhaps having more information about the case. Thus, the Respondents have not demonstrated that they have made "a good faith effort to obtain the discovery through less intrusive methods," prior to seeking to Mr. Crandall's deposition.[10] 228 W.Va. at 751, 724 S.E.2d at 355, Syl. Pt. 3.

The circuit court and the Respondents failed to follow the directive of this Court in *MassMutual I.* Instead, the circuit court agreed with the Respondents very narrow and misguided view of our *MassMutual I* decision that they did not have to show that Mr. Crandall had unique or personal knowledge, because "[t]he Supreme Court of Appeals simply wants a record. . . ." This Court expected the circuit court and the parties to follow the law set forth in *MassMutual I* in deciding whether to allow the deposition of Mr. Crandall. *See id.* The circuit court failed to implement both the letter and the spirit of the mandate issued in *MassMutual I,* taking into account this Court's opinion and the circumstances it embraced.[11] *See*

*State ex rel. Frazier & Oxley, L.C.,* 214 W.Va. at 805, 591 S.E.2d at 732, Syl. Pt. 3.

## IV. Conclusion

Based upon the foregoing, the Circuit Court of Jefferson County is prohibited from enforcing its Order entered on May 24, 2012, requiring Roger Crandall, President, Chief Executive Officer ("CEO"), and Chairman of MassMutual, to submit to deposition. The Court directs the circuit court enter a protective order prohibiting the deposition of Mr. Crandall following this Court's decision in *State ex rel. Massachusetts Mutual Life Ins. Co. v. Sanders,* 228 W.Va. 749, 724 S.E.2d 353 (2012).

Writ Granted.

---

**10.** The Court cautions that simply because the Respondents engage in less intrusive methods of discovery does not automatically entitle them to take Mr. Crandall's deposition. The Respondents must first show that they tried to obtain the discovery sought in good faith through less intrusive methods. 228 W.Va. at 751, 724 S.E.2d at 355, Syl. Pt. 3. Once this showing is made, "the party seeking the deposition may attempt to show (1) that there is a reasonable indication that the official's deposition is calculated to lead to the discovery of admissible evidence, and (2) that the less intrusive methods of discovery are unsatisfactory, insufficient or inadequate." *Id.*

